IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ROBYN SPAINHOWARD as )<br>Administratrix of the Estate of )<br>MICHAEL ZENNIE DIAL II, deceased )<br> )<br>    Plaintiff, )<br> )<br>vs. )<br> )<br>WHITE COUNTY, TENNESSEE; )<br>ODDIE SHOUPE, Sheriff of White County, )<br>individually; )<br>ADAM WEST, Officer of White County, )<br>individually; )<br>CITY OF SPARTA, TENNESSEE; )<br>and )<br>CHARLIE SIMS, Officer of Sparta, Tennessee, )<br>Individually, )<br> )<br>    Defendants. )  | CASE NO._____<br><br>JURY DEMAND |

## COMPLAINT

Comes now the Plaintiff, by and through her attorneys, and files this Complaint. For cause of action against the Defendants, both jointly and severally, Plaintiff would respectfully state as follows:

    1.    This is an action brought by Robyn Spainhoward as Adminstratrix of the Estate of Michael Zennie Dial II as a result of the wrongful death and deprivation of civil rights of Mr. Dial, her husband, who was shot and killed by the Defendants, all of whom were acting under color of state law without justification and in violation of his constitutional rights.

### I. JURISDICTION AND VENUE

    2.    This action is brought against the Defendants pursuant to 42 U.S.C. § 1983 for deprivation of civil rights secured by the Fourth and Fourteenth Amendments to the United

1

States Constitution.

3. Jurisdiction is founded upon 28 U.S.C. § 1331, § 1343(a)(3)(4), and § 1367(a). This Court has jurisdiction over the Plaintiff's claims of violation of civil rights under 42 U.S.C. § 1983. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that the factual acts and omissions which give rise to this cause of action occurred within this district and within one year of the filing of this complaint and this Court otherwise has jurisdiction.

## II. PARTIES

4. The Plaintiff is a citizen and resident of the United States, domiciled in Davidson County, Tennessee. Ms. Spainhoward, the legal wife of Mr. Dial at the time of his death, brings this action as the Adminstratrix of the Estate of Michael Zennie Dial, II, deceased.

5. Defendant White County, Tennessee, is a political subdivision of the State of Tennessee. Defendant is and was at all times relevant responsible for the training and supervision of Defendants Oddie Shoupe and Adam West. White County at all times relevant has established and implemented policies, practices, procedures, and customs used by law enforcement officers employed by White County regarding arrests and the use of force. At all times relevant, White County and its officers were acting under color of state law.

6. Defendant City of Sparta is a political subdivision of the State of Tennessee. Defendant is and at all times relevant has been responsible for the training and supervision of Defendant Charlie Sims. The City of Sparta has established and implemented policies, practices, procedures, and customs used by law enforcement officers employed by the City of Sparta regarding arrests and the use of force. At all times relevant, the City of Sparta and its officers were acting under the color of state law.

2

7. Defendant Oddie Shoupe is a citizen and resident of Tennessee, and was at all times material to the allegations in this complaint acting in his capacity as a White County Sheriff and was acting under color of state law. He is sued in his individual capacity.

8. Defendant Adam West is a citizen and resident of Tennessee, and was at all times material to the allegations in this complaint acting in his capacity as a White County reserve deputy sheriff and was acting under color of state law. He is sued in his in his individual capacity.

9. Defendant Charlie Sims is a citizen and resident of Tennessee and was at all times material to the allegations in this complaint acting in his capacity as an officer of the Sparta Police Department and was acting under color of state law. He is sued in his individual capacity.

10. Defendant White County had the responsibility to establish, institute and implement adequate policies and procedures regarding its enforcement officers' use of force when detaining citizens or making an arrest.

11. Defendant City of Sparta had the responsibility to establish, institute and implement adequate policies and procedures regarding its enforcement officers' use of force when detaining citizens or making an arrest.

12. Defendant White County had the responsibility to train its officers in the correct use of force procedures to be used when detaining citizens or making an arrest.

13. Defendant City of Sparta had the responsibility to train its officers in the correct use of force procedures to be used when detaining citizens or making an arrest.

14. Each and all of the acts of the Individual Defendants and other members of the White County Sheriff's Department and Sparta Police Department involved in this incident were performed under the color and pretense of the constitutions, statutes, ordinances, regulations,

3

customs and usages of the United States of America and the State of Tennessee, White County, the City of Sparta, under the color of law and by virtue of their authority as law enforcement officers for White County and the City of Sparta and in the course and scope of their employment with White County, the White County Sheriff's Department, the City of Sparta and the Sparta Police Department.

### III. FACTUAL ALLEGATIONS

15. On April 13th, 2017, Mr. Dial was stopped by law enforcement in a parking lot in Dekalb County, Tennessee. During this stop, officers with the Smithville Police Department learned that Mr. Dial's driver's license was suspended.

16. It was determined Mr. Dial had not committed any crime. However, he was told he was not free to drive away in his vehicle because his driver's license was suspended.

17. Mr. Dial was later observed by Smithville police driving his 1976 Chevrolet pick-up truck with a fully loaded trailer in tow.

18. Smithville Police attempted to stop Mr. Dial for driving on a suspended license.

19. Mr. Dial did not stop and continued driving along Tennessee State Highway 70 towards White County.

20. Tennessee Highway Patrol was contacted and continued the pursuit into White County, Tennessee.

21. Mr. Dial entered into White County and later the City of Sparta. When he did so, White County Sheriff's deputies and Sparta Police officers joined in the pursuit.

22. While traveling along State Highway 111 northbound at speeds of approximately fifty miles per hour, both White County deputies and Sparta police officers attempted to stop Mr. Dial by utilizing what is known as a "pit maneuver."

23. Several officers employed by each of the municipal defendants were unsuccessful in their efforts to stop Mr. Dial. However, their failed efforts resulted in them damaging their own patrol vehicles.

24. Mr. Dial continued to travel northbound on Highway 111, north of Sparta, in a remote area, at speeds of approximately fifty miles per hour. At no point after turning onto Highway 111 did Dial pose a threat to any members of the public. In fact, as the dashcam video indicates, Mr. Dial was in reasonable control of his vehicle.[1]

25. Defendant Shoupe, upon hearing his deputies were attempting to use the pit-maneuver, communicated to instead use deadly force.

26. Defendant Shoupe entered the order to use deadly force solely to prevent damage to patrol cars, and for no legitimate law enforcement purpose.

27. Upon hearing the command to use deadly force, Defendant Deputy West immediately un-holstered his gun.

28. White County Deputy Brandon Young ignored the command and continued his efforts to utilize the pit maneuver.

29. Deputy Young was successful in causing Mr. Dial to veer sideways off of the highway into a ditch-like area on the side of the road.

30. When Mr. Dial's vehicle was driven off the road and towards the ditch-like area, there was no imminent safety threat that required the use of deadly force.

31. When Defendant Deputy West was able to get Mr. Dial in his line of sight, he immediately reached out the driver's side window with his left hand and fired three shots at Mr. Dial.

---

[1] The Plaintiff is filing a motion along with this Complaint seeking leave to attach the dashcam video to be considered as an attachment to this Complaint.

5

32. Defendant Deputy West fired the three shots at Mr. Dial because he was expressly ordered to do so by Defendant Shoupe.

33. Mr. Dial's vehicle continued off to the right side of Highway 111 onto a steep embankment. Again, at this point, Mr. Dial posed no risk to anyone.

34. Defendant Deputy West stopped his vehicle, exited and continued to fire shots at Mr. Dial until his magazine was empty. Deputy West struck Mr. Dial with at least one of these shots.

35. Sparta Police Officer Charlie Sims saw the Dial vehicle wrecking and turned his patrol car around on Highway 111 facing the general direction of Mr. Dial.

36. Defendant Officer Sims exited his vehicle and fired approximately four or five shots as Mr. Dial drove past him on the adjoining embankment. Officer Sims struck Mr. Dial with at least one of these shots.

37. Mr. Dial then crashed his vehicle into the tree line which was below and parallel to Highway 111 northbound.

38. Defendant Deputy West reloaded his firearm and fired an additional shot at Mr. Dial several seconds after he crashed.

39. Mr. Dial was non-responsive as law enforcement approached his vehicle and he was immediately pulled from his vehicle.

40. Deputy Young noted the bullet hole in Mr. Dial's head, as well as Dial's blood-covered white shirt.

41. Mr. Dial was life-flighted to Highland's Medical Center in Sparta, TN and was later pronounced dead as a result of the shooting.

6

42. Shortly after the shooting, Defendant Shoupe admitted he had preferred to shoot and kill Mr. Dial rather than risk damaging his patrol cars.

43. Defendant Shoupe while discussing the death of Mr. Dial to another deputy stated: "I told him, I said 'take him out. Damn, I don't give a shit. He said 'we'll ram him', I said 'don't ram him, shoot him.' Fuck that shit. Ain't gonna tear my cars up. But I got two cars tore up again."

44. In the same conversation, Defendant Shoupe said: "Let me tell you something (Deputy) Gaw, if they don't think I'll give the order to kill that motherfucker, they're full of shit."

45. Defendant Shoupe continued the conversation expressing his disappointment for not being there while the action was happening and how much he loves these situations, stating: "I love this shit. I thrive on it."

46. Defendant Shoupe is an elected official, holding the position and title of Sheriff. He is in charge and control of all White County deputies.

47. Although not physically present, Defendant Sheriff Shoupe gave the command to use deadly force and kill Mr. Dial. That command could easily be characterized as a command to commit murder. The command was then followed by Defendant Deputy West.

48. The Sparta Police Officer, Defendant Sims, recklessly and intentionally fired his weapon at Mr. Dial without justification.

49. Mr. Dial was not armed at any point relevant hereto. There was not a firearm in his vehicle. No law enforcement agent involved in this incident had any information that would lead them to believe Mr. Dial was armed.

7

Case 2:18-cv-00015   Document 1   Filed 02/02/18   Page 7 of 17 PageID #: 7

50. Mr. Dial never used his vehicle in a threatening manner towards law enforcement or civilians nor did the action of Mr. Dial constitute a threat to either law enforcement or civilians.

51. Neither the Sparta Police officers nor the White County Sheriff's deputies were ever advised that the suspect was armed. Moreover, it appears neither law enforcement agency was aware of why or who they were pursuing.

52. The traffic stop was initiated entirely because of a suspended drivers license.

53. As a direct and proximate result of the intentional, willful, recklessly indifferent and/or malicious acts of the Defendants, Mr. Dial was killed.

54. Each of the Defendants, both individually and in concert with the others, acted under color of state law in their official capacity to deprive Mr. Dial of his clearly established right to life and to be free from excessive force under the Fourth and Fourteenth Amendments to the Constitution of the United States and by 42 U.S.C. §§ 1983 and 1988.

55. Plaintiff is entitled to compensation for the violation of Mr. Dial's constitutional rights and the constitutional harms that the Defendants inflicted upon Mr. Dial resulting in his tragic and untimely death.

56. Defendant White County either had or should have had policies and procedures in place to protect against such harm. In the event policies and procedures were in place, they were defective and/ or not enforced. Further, in the event policies and procedures were in place, Defendant failed to train and supervise and/or improperly trained and supervised its officers and deputies as to same. The existence of these policies and procedures, and/or the proper training and/or supervision as to same, would have prevented the atrocities perpetrated on Mr. Dial. This

constitutes an actionable cause against White County in violation of the Plaintiff's Fourth and Fourteenth Amendment rights under the Constitution of the United States.

57. The above-described deprivations of Plaintiff's constitutional rights are a direct and proximate result of the actions, omissions, policies, and customs of Defendant White County and the named defendant White County officer Adam West. All White County Defendants knew or should have known that the policies, customs, and conduct violated clearly established constitutional rights that would have been apparent to reasonable persons.

58. Defendant City of Sparta either had or should have had policies and procedures in place to protect against such harm. In the event policies and procedures were in place, they were defective and/ or not enforced. Further, in the event policies and procedures were in place, Defendant failed to train and supervise and/or improperly trained and supervised its officers and deputies as to same. The existence of these policies and procedures, and/or the proper training and/or supervision as to same, would have prevented the atrocities perpetrated on Mr. Dial. This constitutes an actionable cause against City of Sparta in violation of the Plaintiff's Fourth and Fourteenth Amendment rights under the Constitution of the United States.

59. The Defendant City of Sparta had or should have had existing policies and procedures, and/or failed to properly train and/or improperly supervised its officers and deputies as to same. The existence of these policies and procedures, and/or the proper training and/or supervision as to same would have prevented the atrocities Mr. Dial suffered that resulted in his death from occurring. This constitutes an actionable cause against the City of Sparta in violation of the Plaintiff's Fourth and Fourteenth Amendment rights under the Constitution of the United States.

60. The above-described deprivations of Plaintiff's constitutional rights are a direct and proximate result of the actions, omissions, policies, and customs of Defendant White County. All White County Defendants knew or should have known that the policies, customs, and conduct violated clearly established constitutional rights that would have been apparent to reasonable persons.

## COUNT I - EXCESSIVE FORCE

61. The Plaintiff re-alleges all allegations previously set forth as if fully set forth herein.

62. In committing the acts complained of herein, all named Defendants acted under of color of state law to deprive Mr. Dial of certain clearly established constitutionally protected rights under the Fourteenth Amendment to the United States Constitution including but not limited to the right to be free from excessive use of force by persons acting under color of state law.

63. In violating Mr. Dial's rights as set forth above and as will be proven at trial, all named Defendants acted under color of state law and the use of excessive force by Defendants was in violation of Mr. Dial's rights under the Fourth and Fourteenth Amendments to the Constitution of the United States.

64. Defendant Shoupe violated Mr. Dial's right to be free from excessive force by ordering his subordinates and other officers on the scene to shoot Mr. Dial without adequate justification.

65. Defendant Shoupe proximately caused the specific use of excessive force discussed herein by ordering his subordinates and other officers on the scene to shoot Mr. Dial without adequate justification.

66. Defendant Shoupe is responsible for the excessive force discussed herein in that he authorized, approved, and/or knowingly acquiesced in the use of excessive force.

67. In fact, Defendant Shoupe explicitly gave the order to use excessive force. There is no indication the pursuing officers would have done so without said order, precisely because the use of deadly force was not proper in light of the present circumstances.

68. Under the circumstances present, it was not only inappropriate but also unconscionable for Defendant Shoupe to give the order to use deadly force. The decision to order the use of deadly force when not physically present to evaluate the situation speaks volumes as to the malicious and sadistic mindset of Sheriff Shoupe. As he gleefully reveals on the video of the incident, he thrives on situations such as this one that resulted in the loss of Mr. Dial's life.

69. In giving the order to use deadly force, Defendant Shoupe used the officers present as his agent of death as surely as if he had pulled the trigger himself.

70. In ordering the officers to shoot Mr. Dial without adequate justification, Defendant Shoupe acted under color of state law and in violation of Mr. Dial's right to be free from excessive force under the Fourth and Fourteenth Amendments, which was clearly established at the time.

71. Defendant Shoupe has a duty to properly supervise his employees and not to order the use of excessive force.

72. Defendant Shoupe acted intentionally, recklessly, maliciously, sadistically, and with deliberate indifference when he gave the order to use deadly force, to shoot Mr. Dial, without adequate justification.

73. As a direct and proximate result of the violation of Mr. Dial's constitutional rights by Defendant Shoupe, Plaintiff suffered general and special damages as alleged in this Complaint and is entitled to relief under 42 U.S.C. § 1983.

74. Defendant West violated Mr. Dial's right to be free from excessive force by using deadly force when such force was not reasonably necessary because Mr. Dial did not pose a threat of serious physical harm to anyone at the time the force was used.

75. Defendant West acted intentionally, recklessly, and with deliberate indifference when he fired shots at Mr. Dial without justification. As such, Defendant West is liable for his use of excessive force.

76. Defendant Sims violated Mr. Dial's right to be free from excessive force by using deadly force when such force was not reasonably necessary because Mr. Dial did not pose a threat of serious physical harm to anyone at the time the force was used.

77. Defendant Sims acted intentionally, recklessly, and with deliberate indifference when he fired four shots at Mr. Dial without justification. As such, Officer Sims is liable for his use of excessive force.

78. As a direct and proximate result of the violation of Mr. Dial's constitutional rights by the Defendants, Plaintiff suffered general and special damages as alleged in this Complaint and is entitled to relief under 42 U.S.C. § 1983.

79. The conduct of the Defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that damages should be imposed against all Defendants and, with the exception of White County and the City of Sparta, that punitive damages should also be imposed in an amount commensurate with the wrongful acts alleged herein in an effort to deter this type of egregious conduct from happening to other citizens.

80. The amount of force ordered and used was grossly disproportionate to the amount of force, if any, that was required. Further, the nature and quality of the intrusion of Mr. Dial's Fourth Amendment interests grossly outweighed the importance of any governmental interests which could potentially justify that intrusion.

81. Mr. Dial's constitutional right to be free from excessive force in all manners described herein was clearly established at the time excessive force was used.

## COUNT II - DELIBERATE INDIFFERENCE - POLICY

82. The Plaintiff re-alleges all allegations previously set forth as if fully set forth herein.

83. The municipal Defendants, City of Sparta and White County, have adopted policies, procedures, practices or customs within their respective law enforcement agencies that allow, among other things, the excessive use of force when other more reasonable and less drastic methods are available.

84. In giving the order to use deadly force while not present at the scene, Defendant Shoupe willfully disregarded said policies, procedures, practices or customs.

85. The actions of all Defendants amount to deliberate indifference to the right of the Plaintiff to be free of excessive force under the Fourth and Fourteenth Amendments to the Constitution of the United States.

86. The actions of all Defendants failed to protect Mr. Dial from the use of excessive, deadly force by the named law enforcement defendants. The reckless actions of all Defendants made it reasonably foreseeable that the harm perpetrated on Dial, resulting in his death, would occur.

13

Case 2:18-cv-00015 Document 1 Filed 02/02/18 Page 13 of 17 PageID #: 13

87. As a result of the deliberate indifference to Mr. Dial's rights by all Defendants including the City of Sparta, White County and Sheriff Shoupe and each of their agents, servants, and employees, Mr. Dial was killed and his Estate is entitled to relief under 42 U.S.C. § 1983.

88. Alternatively, even if the individual acts of one of the Defendants did not rise to an independent level of culpability, the combined acts and/or omissions of several officers acting under a governmental policy or custom results in a situation where the combined conduct makes each individual defendant liable for a violation of Mr. Dial's constitutional rights

## COUNT III - FAILURE TO TRAIN/ SUPERVISE

89. The Plaintiff re-alleges all allegations previously set forth as if fully set forth herein.

90. The Defendants City of Sparta and White County, by and through their authorized agents, servants, and employees, in particular Defendant Shoupe, permitted, encouraged, and tolerated an official pattern, practice, or custom of its law enforcement officers in making apprehension that violated the federal constitutional rights of citizens, including specifically the Plaintiff.

91. Not only did Defendant White County, by and through their authorized agent Defendant Shoupe—the ultimate authority on creation, implementation and enforcement of policy for White County—permit, encourage and tolerate the above patterns and policies, they affirmatively ordered the officers present to act in a fashion that violated the federal constitutional rights of citizens, including specifically the Plaintiff.

92. The Defendants City of Sparta and White County, by and through their authorized agents, servants, and employees had in place at the time of the incident rules, regulation, practices, or customs for situations such as the one at issue herein. The failure to properly train

14

and implement proper policies and procedures was a proximate cause of the injuries to the Plaintiff.

93. Not only did Defendant White County, by and through their authorized agent Defendant Shoupe—the ultimate authority on creation, implementation and enforcement of policy for White County—fail to adequately train and educate their officers in the proper use of force to subdue a citizen, they affirmatively instructed the officers present to follow a course of action that they knew or should have known would violate the constitutional rights of the Plaintiff.

94. Defendants City of Sparta and White County, failed to adequately train and educate their officers in the proper use of force to subdue a citizen.

95. Defendants City of Sparta and White County, implicitly or explicitly failed to train and supervise their officers. Said failure amounts to deliberate indifference to the rights of the Plaintiff to be free from excessive force under the Fourth and Fourteenth Amendments to the Constitution of the United States.

96. It was reasonably foreseeable that the failure of City of Sparta and White County to train and supervise its officers to properly handle vehicle stops would result in the use of excessive force.

97. It was reasonably foreseeable that the failure of City of Sparta and White County to train and supervise its officers to coordinate tactical maneuvers with each other and other agencies would result in the use of excessive force.

98. The failure of Defendants City of Sparta and White County to adequately train and supervise Defendants West and Sims amounts to deliberate indifference and reckless

15

Case 2:18-cv-00015 Document 1 Filed 02/02/18 Page 15 of 17 PageID #: 15

disregard to the rights of the Plaintiff to be free from excessive force and under the Fourth and Fourteenth Amendments to the Constitution of the United States.

99. The foregoing actions of all Defendants were directly and proximately caused by the policies, practices, and customs of the City of Sparta and White County, which all were conducted under color of state law to deprive Mr. Dial of constitutionally protected rights including but not limited to the right to be free from excessive use of force by persons acting under color of state law resulting in the homicide of Mr. Dial, entitling his estate to compensation under 42 U.S.C. § 1983

## COUNT IV - PUNITIVE DAMAGES

100. The Plaintiff re-alleges all allegations previously set forth as if fully set forth herein.

101. The actions and omissions of the Individual Defendants (excluding Sparta and White County) complained of herein were unlawful, conscious shocking and unconstitutional and performed maliciously, recklessly, fraudulently, sadistically, retaliatory, intentionally, willfully, wantonly and in such a manner as to entitle the Plaintiffs to a substantial award of punitive damages.

## PRAYERS FOR RELIEF

102. That process issued to the Defendants and that they be required to answer in the time required by law.

103. That judgment be rendered in favor of the Plaintiff and against the Defendants on all causes of action asserted herein.

104. That Plaintiff be awarded those damages to which it may appear that it is entitled by proof submitted in this case for the wrongful death of Michael Dial including but not limited

to pain and suffering prior to death, and the violation of the rights guaranteed to Mr. Dial by the Fourteenth Amendment to the Constitution of the United States in an amount of no more than ten million dollars.

105. That as to all Defendants except for White County and the City of Sparta, that punitive damages be asserted against the remaining Defendants.

106. That as to all Defendants that the Plaintiff be awarded reasonable expenses including reasonable attorneys fees and expert fees and discretionary costs pursuant to 42 U.S.C. § 1988 (b) and (c).

107. That the Plaintiff receives any other further and general relief to which it may appear that he is entitled.

108. That a jury trial is demanded.

Respectfully submitted,

/s/ David J. Weissman
**David J. Weissman (BPR #25188)**
**Benjamin K. Raybin (BPR #029350)**
RAYBIN & WEISSMAN, P.C.
424 Church Street, Suite 2120
Nashville, Tennessee 37219
(615) 256-6666
(615) 254-4254- fax
DWeissman@NashvilleTNLaw.com
BRaybin@NashvilleTNLaw.com

/s/ Michael Shipman
**J. Michael Shipman, II (BPR #27535)**
SHIPMAN & CRIM, PLLC
230 E. Broad Street, Suite 206C
Cookeville, Tennessee 38501
Office (615) 829 – 8259
Fax (615) 301 - 6499
*michael@shipmancrim.com*
*Attorneys for Plaintiff*